165 So. 643

### HANHART v. GREAT STATES INS. CO.

No. 33512.

Jan. 6, 1936.

Rehearing Denied Feb. 3, 1936.

St. Clair Adams & Son, of New Orleans, for appellant.

Edward S. Spiro, of New Orleans, for appellee.

LAND, Justice.

On November 17, 1930, defendant company issued a fire insurance policy to plaintiff for a premium of $42, covering a frame building at Nos. 927–929 Caffin avenue in the city of New Orleans, to an amount of $7,000, for a period of three years.

On June 15, 1933, the property insured was destroyed by fire of unknown origin, and plaintiff sustained a total loss.

On August 28, 1933, plaintiff furnished to defendant's adjuster proof of a complete fire loss under the policy. Although admitting a total loss, the defendant refused to pay plaintiff the amount of $7,000 for which the building was originally insured, and offered him only $3,500, which plaintiff declined to accept.

Plaintiff then filed the present suit to recover the sum of $7,000, the full amount of the insurance, with statutory damages at 12 per cent. and $750 as a reasonable attorney's fee.

The defense is that, on March 28, 1933, plaintiff had caused a rider to be attached to the policy, dividing the original insurance of $7,000, by placing $3,500 on the premises Nos. 927–929 Caffin avenue and $3,500 on the premises Nos. 1028–1030 Caffin avenue, in the city of New Orleans.

Defendant also seeks to avoid the policy, on the ground that plaintiff's proof of the loss was fraudulent and knowingly and falsely made.

Judgment was rendered in the civil district court in favor of plaintiff in the sum of $3,500, with legal interest from date of judicial demand until paid, together with 12 per cent. statutory damages on the amount of $3,500 from August 15, 1933, or 60 days after the loss, together with $150 attorney's fees and for all costs.

From this judgment, defendant has appealed, and plaintiff has answered the appeal, praying that the judgment be amended by increasing the amount to that originally claimed for insurance and attorney's fees, and for the full penalty of 12 per cent. as statutory damages, to be assessed from the date of the fire, June 15, 1933.

Defendant contends that plaintiff went to Edgar Steiner and Otto Richards, who are connected with defendant insurance company, in different capacities, and requested that the policy he had covering $7,000 on 927–929 Caffin avenue, be indorsed so as to cover that building for $3,500 and to cover another building which he owned at 1028–1030 Caffin avenue for the balance of the policy, $3,500, and that the conference took place at the Steiner Insurance Agency; that, after plaintiff made this request and the form was drawn up in the regular course of business by the company's stenographer, one copy was sent to the Louisiana Rating and Fire Prevention Bureau, as required by law, one copy was kept in the file, and one copy sent to plaintiff in the mail in the regular and usual manner.

1. In our opinion, defendant has failed to prove its defenses in this case with reasonable certainty.

Plaintiff testified that he never received from defendant, or from any of its agents, any letter or notice as to the rider attached to the policy, nor the original rider or any copy of same.

The Steiner Insurance Agency in the city of New Orleans was the agent of defendant that handled the matter as to the rider attached to the policy.

The stenographer and bookkeeper of that agency testified that she was required to draw up various forms of policies and endorsements, and that there are three copies of all forms.

She stated in her testimony that: "The *original* is sent to *the assured,* we keep a copy, and the third copy goes to the Rating Bureau *and then to the company.*" Tr. p. 74. (Italics ours.)

It is clear, therefore, that neither the copy of the indorsement nor rider in this

case kept in the office of the Steiner Insurance Agency, nor the copy sent to the Louisiana Rating and Fire Prevention Bureau, to be sent to the company, constitutes notice to plaintiff.

The stenographer and bookkeeper of defendant does not pretend to testify that any *letter* advising plaintiff as to the original rider was ever mailed to him; but, on the contrary, states that, in this particular case, she does not believe that "Mr. Steiner dictated a letter to Mr. Hanhart (plaintiff) setting forth the fact that the endorsement was enclosed." Tr. p. 75. Besides, there is no copy of such a letter produced from the files of the Steiner Insurance Agency and filed in evidence in this case.

This witness also testified as follows:

"Q. In this particular case, do you recall what happened to *the original form of endorsement?*

"A. I don't exactly recall, but *I presume* it was mailed as it usually is. I mail out everything. I didn't pay particular attention to this one copy." Tr. 74. (Italics ours.)

This witness further testified: "Q. Is it customary, where there are important endorsements to be made on a policy, and such an endorsement is sent out by mail, have you any policy of having this sent out by registered mail so as to make certain the letter has been received by the insured?

"A. No, sir, I don't think we have done that." Tr. 76.

Plaintiff and his wife both testify that they are the only persons residing in the insured premises, 927–929 Caffin avenue, and that the mail delivered there is placed in the hands of plaintiff by his wife.

Plaintiff testifies positively that he received no mail from defendant insurance company or from the Steiner Agency, its agent, at his residence, with reference to the policy sued on.

He states in his testimony: "I have never received any mail from the Insurance Company. All my business was done at 327 Girod through Mr. Steiner or Mr. Richards, because I paid him $10.00 a month on a truck he was carrying liability insurance on and paid him right there and saw him not once but two or three times a month." Tr. 35.

The Mr. Richards, referred to in above testimony, is not a general agent, but the state agent of Gross-Scruggs Company, general agents operating in four states, Louisiana, Texas, Oklahoma, and Arkansas. They are Southern managers of fire insurance companies, and are represented by Mr. Richards as their agent in the state of Louisiana.

Besides, acting in his capacity as state agent, he also solicits business through his friends and places it with his different agents, the Steiner Insurance Agency included. Tr. 41, 42.

Plaintiff testified that it was through his friendship for John Fahey, now deceased, that he took out this insurance and gave it to Mr. Richards.

At the date of the alleged rider, March 28, 1933, the property at 1028-1030 Caffin avenue had been without any insurance for a period of at least a year, while the policy sued on would have expired in about seven months, and the division of the insurance into halves of $3,500 each on both properties would have sacrificed, in case of loss, not only the value of the first piece, built by plaintiff at a cost of $10,000, and continuously insured for nine years at $7,000 per annum, but it would have sacrificed, in case of loss, the second piece, valued at $9,000, and purchased by plaintiff from the Phœnix Homestead in February, 1932, and with transferred insurance for thirty days only.

Plaintiff testifies positively that he did not tell Mr. Richards to change the insurance, but that he would give him the other house when the insurance ran out on the first property; that he bought the house at 1028-1030 Caffin avenue in 1932, and would have changed the insurance when the property was bought, and would not have waited until 1933 to change it; that, if he could have done without insurance one year, he could have done without it six months, referring to the short time within which the policy would have expired, when the rider was attached. This is, without doubt, a reasonable and convincing argument on behalf of plaintiff, ·as to why he did not authorize the change in the policy.

Moreover, plaintiff insists and reiterates, throughout his entire testimony in this case, that the only statement he made to the agents of defendant company, at any time, was that he would insure both properties when the insurance on the first property expired.

Under the above state of facts, the testimony of Mr. Richards that plaintiff requested a division of the insurance of $7,000 into halves of $3,500, as he thought that there was "too much insurance" on the first property, does not impress us, particularly as Mr. Lala, adjuster for defendant company, testifies that "the damages largely exceeded" the insurance of $3,500 on the first property; and, for this reason, Mr. Miazza, secretary of the late New Orleans Adjustment Company, instructed Mr. Lala to offer $3,500 to plaintiff. It is testified by. plaintiff that this offer was made to him. Mr. Lala, the adjuster, denies in his testimony that he made it. But Mr. Miazza himself, one of defendant's witnesses, contradicts Mr. Lala, by citing the latter's written report made to Mr. Miazza, showing that the offer was made, thereby corroborating the testimony of plaintiff to that effect. Tr. 43, 44, Richards; Tr. 91, Hanhart; Tr. 95, 96, 100, 101, Lala; Tr. 105, 109, Miazza.

It appears, therefore, that, although Mr. Lala was placed on the witness stand to impeach Mr. Hanhart, the plaintiff, he was himself impeached by Mr. Miazza, one of the witnesses of defendant company. Tr. 89, 90, 91, 92, etc.

The division of the insurance in this case is so manifestly against the interest of plaintiff that a reasonable man would not have authorized it. Besides, even had he made the mistake of doing so, he would not have permitted the second piece of property to remain without insurance a

whole year, before making the request for the rider dividing the insurance. The fact that only seven months of the policy remained before its expiration, when the rider is said to have been attached to the policy, rather confirms the testimony of plaintiff that he only stated to the agents of defendant company that he would insure both properties, when the policy expired on the first property. The fact also that no notice was given plaintiff that the rider had been attached to the policy is strongly in favor of plaintiff's testimony that the division of the insurance was not authorized by him.

The stenographer and bookkeeper of the Steiner Insurance Agency also testified as to the division of the policy in this case as follows: "I consider it very important *and very unusual.* It had never occurred *before,* that is why I remember the case." Tr. 75, 76. (Italics ours.)

Both Mr. Richards and Mr. Steiner testify: That at the date of the alleged change, they called at a blacksmith shop on Girod street to seek plaintiff, primarily with reference to other policies, and that this was done on their own volition and at their own suggestion. Tr. 55.

That, after discussing the other business, the subject was brought up about the property 1028–1030 Caffin avenue, and that they proceeded with plaintiff from the blacksmith shop on Girod street and drove to the Baltar building. That, although plaintiff had requested the change in the policy, yet, when they arrived at the Baltar building, he would not go up to Mr. Steiner's office. That thereupon Mr. Steiner went up to his office and checked up to see if it was possible to make the change, then came down to the automobile, where plaintiff was waiting, and told him that he would see that the change was made. That nothing further occurred, and plaintiff left. That from that time on Mr. Steiner, agent of defendant company, stated that he never spoke to plaintiff about the change in the policy again, although he had other business with plaintiff concerning other policies. He states, however, that he instructed the stenographer in his office to prepare an indorsement, but does not know whether she mailed it or not. Tr. 66, 69, 72.

The plaintiff emphatically denies that he, at any time, requested either of these agents of defendant insurance company to make any change in the policy.

The order of Mr. Miazza, secretary of the late New Orleans Adjustment Company, directed to Mr. Lala, the adjuster of defendant insurance company, to pay plaintiff insurance in the sum of $3,500 is wholly inconsistent with the defenses of fraud and concealment, relied upon by that company as grounds for the annulment of the policy sued upon in this case, and is an admission that such defenses are not well founded.

The trial judge evidently, reached the same conclusion, as he rendered judgment in favor of plaintiff for insurance in the sum of $3,500, or one-half of the face value of the policy sued on.

Our conclusion is that defendant has failed to prove any of its defenses in this case, and that there should be judg-

ment in favor of plaintiff as prayed for originally.

It is therefore ordered that the judgment appealed from be increased from $3,500, the amount of insurance therein allowed, to $7,000, the face of the policy sued on, that the amount of $3,500 therein allowed as the basis of calculation of 12 per cent. statutory damages from August 15, 1933, or 60 days after the loss, be increased to $7,000, and that the amount of $150 therein allowed for attorney's fees be increased to $750.

It is now ordered that the judgment, as amended, be affirmed, and that defendant, Great States Insurance Company, pay the costs of this court and of the district court.

On Application for Rehearing.

PER CURIAM.

On application for rehearing it is contended by defendant and appellant that that portion of our decree in respect to the penalty, reading as follows: "It is therefore ordered that the judgment appealed from be increased from $3,500, the amount of the insurance therein allowed, to $7,000, the face of the policy sued on, that the amount of $3,500 therein allowed on as the basis of calculation of 12 per cent. statutory damages from August 15, 1933, or sixty days after the loss, be increased to $7,000, and that the amount of $150 therein allowed for attorney's fees be increased to $750"—might be interpreted to mean 12 per cent. statutory damages per annum from August 15, 1933.

The decree as written, with reference to the penalty, in our opinion, can have but one interpretation, and that is, that the 12 per cent. statutory damages to which plaintiff is entitled, after due proof has been made and the sixty-day period has elapsed, is to be paid in addition to the amount of the loss and shall be computed on the total amount due under the policy, regardless of the period of time that has elapsed.

Rehearing refused.